## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **MAHA ABDOU MIKHAEL,**<br>4647 Redwood Drive<br>Brunswick, OH 44212, | )<br>)<br>)<br>) |

**MAHA ABDOU MIKHAEL,**  )  **CASE NO.:**
4647 Redwood Drive            )
Brunswick, OH 44212,          )
                              )  **JUDGE:**
                              )
              Plaintiff,      )
                              )
**vs.**                       )  <u>**COMPLAINT**</u>
                              )
**CLEVELAND PUBLIC MARKET**   )  *(Jury Demand Endorsed Hereon)*
**CORPORATION,**              )
c/o MH Business Services LLC  )
Statutory Agent               )
600 Superior Ave. E. Suite 2100 )
Cleveland, OH 44114,          )
                              )
        ALSO SERVE:           )
        **CLEVELAND PUBLIC**  )
        **MARKET CORPORATION,** )
        1979 West 25th Street )
        Cleveland, Ohio 44113, )
                              )
and                           )
                              )
                              )
**CITY OF CLEVELAND,**        )
c/o Department of Law         )
601 Lakeside Avenue           )
Room 106                      )
Cleveland, OH 44114-1077,     )
                              )
                              )
and                           )
                              )
**ROSEMARY MUDRY,**           )
*In Her Official and Individual Capacity* )
c/o MH Business Services LLC, )
Statutory Agent               )
600 Superior Ave. E. Suite 2100 )
Cleveland, OH 44114,          )
                              )
                              )
and                           )

**JOHN DOES 1-10,**           )
Person(s), corporation(s), and other entities  )
who have engaged in unlawful and tortious  )
conduct relative to Plaintiff under the color  )
of law                              )
                                     )
True Name(s) and Address(es) Unknown,   )
                                     )
                  Defendants.       )

Maha Abdou Mikhael ("Plaintiff"), by and through undersigned counsel, hereby brings this Complaint against Cleveland Public Market Corporation, the City of Cleveland, Rosemary Mudry, and John Does 1-10 (collectively, "Defendants") and alleges as follows:

## JURISDICTION AND VENUE

1.     This Court's jurisdiction over Plaintiff's federal claims is founded upon 28 U.S.C. §1331 and §1343 and the Constitution of the United States.

2.     This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. §1367.

3.     Venue in the United States District Court for the Northern District of Ohio is proper under 28 U.S.C. §1391(b). The events giving rise to these claims arose in the Northern District of Ohio, and, upon available information and belief, Defendants reside in the Northern District of Ohio.

## PARTIES

4.     Maha Abdoul Mikhael ("Maha") is a citizen of the State of Ohio who resides in the City of Brunswick in Medina County, Ohio.[1]

---

[1]    Affidavit of Maha Abdou Mikhael  (hereinafter, "Affidavit of Maha") at ¶ 1.

5.      Upon available information and belief, the City of Cleveland ("the City") is an Ohio municipal corporation residing in the northern District of Ohio and acting under the color of state law. At all times relevant to this Complaint, the City acted by and through its officials acting or purporting to act within the full scope and authority of their office.

6.      Upon available information and belief, Cleveland Public Market Corporation ("CPMC") is an Ohio non-profit corporation organized and existing under the laws of the State of Ohio with its principal place of business located at 1979 West 25th Street Cleveland, Ohio 44113. At all times relevant to this Complaint, CPMC purported to act under the color of state law by way of its contractual relationship with the City and undertaking of delegated public functions.

7.      Upon available information and belief, Rosemary Mudry ("Mudry") is a citizen of the State of Ohio who resides in Cuyahoga County, Ohio. At all times relevant to this Complaint, Mudry was employed by CPMC and/or the City, and purported to act within the full scope of her authority and office, and under color of state law.

8.      Upon available information and belief, John Does 1-10, names and addresses unknown (*Plaintiff will seek to amend this Complaint when this information is discovered*) are persons and/or entities who have engaged in unlawful and tortious conduct relative to Plaintiff, including, but not limited to, actions taken within the scope of their authority and office and under the color of state law.

## **FACTUAL ALLEGATIONS**

### **The Market**

9.      The West Side Market ("the Market") is located at 1979 West 25th Street Cleveland, Ohio 44113 and is owned by the City pursuant to Ohio Revised Code §715.28.

10.     From its founding in 1912 through and until April 2024, the Market was also managed and operated by the City.

11.     The Market is Cleveland's oldest continuously operating public market, consisting generally of the interior concourse where vendors sell, *inter alia,* meats, seafood, and baked goods, and the arcade, where vendors sell, *inter alia*, fresh produce.

12.     Vendors within the Market operate independently of the Market, leasing space within the interior concourse and the arcade through Rental Agreements with the City by and through its Department of Public Works. In turn, the City would enforce its rules and regulations on its vendors as tenants. This scheme of operation continued through Spring 2024.

## Maha, Aiman & King Produce

13.     Maha's husband, Aiman, came to the United States from Egypt in the 1980s, seeking a brighter future following the death of his mother and his sister's battle with terminal cancer. He settled in Cleveland to build a better life and support his loved ones from afar. In 1985, Aiman started King Produce to sell nutritious and reasonably priced produce to his patrons and take steps toward attaining the American dream.[2]

14.     Maha immigrated to the United States from Egypt in 2001 with her three-year old daughter in tow and expecting her second child. At the time, Maha was enduring a brutal divorce; however, she still found the strength to work twenty-hour days to provide for her young family.[3]

15.     Maha met Aiman in 2006 and began working alongside him at King Produce in the West Side Market, where they built a life rooted in hard work and service to the community. They

---

[2]     Affidavit of Aiman Ebrahim (hereinafter, "Affidavit of Aiman") at ¶ 1, 2.
[3]     Affidavit of Maha at ¶ 2.

went on to get married, have three more children together, and put their two eldest daughters through college and professional school.[4]

16.     King Produce remains in operation in the Market, occupying Arcade Stall Nos. 24, 26, and 28 by way of a Rental Agreement between Maha, Aiman, and the City by and through its Director of Public Works ("the Lease"). The Lease had a term commencing on September 8, 2022 and expiring on August 31, 2023. Following the expiration of the Lease, King Produce has continued its tenancy at the Market on a month-to-month basis.[5]

17.     Outside of King Produce's operation in the Market, Maha has never had a standalone storefront or any other means to sell her produce.[6] Indeed, it was her operation at the Market which enabled Maha to establish herself as a recognized and well-respected produce vendor, receiving positive remarks from patrons and maintaining a loyal customer base.[7]

18.     As longstanding Market vendors, Maha and Aiman had a unique awareness of – and accompanying sense of duty to speak out regarding – concerns with the Market's operation and management. In 2019, Maha and Aiman began to vocally espouse concerns to Felicia Hall ("Ms. Hall"), then-manager of the West Side Market. These concerns focused largely on the following issues:

    a.   Advocating for better sanitation at the Market;

    b.   Eradicating the Market's significant rat infestation;

    c.   Improving Market security for patrons and vendors alike, including to protect against the increase in theft and other documented crimes; and

---

[4]     Affidavit of Maha at ¶ 2; Affidavit of Aiman at ¶ 2.
[5]     Affidavit of Maha at  ¶ 3, 6, 11; Affidavit of Aiman at ¶ 3, 6, 11.
[6]     Affidavit of Maha at  ¶ 5; Affidavit of Aiman at ¶ 5.
[7]     Affidavit of Maha at  ¶ 10; Affidavit of Aiman at ¶ 10.

    d.   Repairing and upgrading vendor stalls and their appliances, such as cooling lockers and refrigerators.[8]

19.    This advocacy and request for assistance were met with resistance and ignored by the City, even when Maha and Aiman took their concerns to the news media to draw scrutiny of the deplorable sanitary conditions, security concerns, and untenantable working conditions and equipment.[9]

20.    Despite their advocacy falling on deaf ears, Maha and Aiman complied with the City's requirements for tenants throughout the changing mayoral administrations. While the Market was under City management, Maha and Aiman would communicate regularly with the City's Market managers who would make comments to Maha and Aiman that they should not speak Arabic so as to not "turn off" customers.[10]

21.    Maha and Aiman remained good and compliant tenants, contributing to the Market's value as a whole. They have always paid their rent and parking lot fees timely and complied with the Market's requirements to the best of their abilities.[11]

22.    King Produce's value to the Market has been regularly recognized by the Market, itself, as evidenced by the regular renewal of its Rental Agreement and the Market highlighting King Produce and its produce selection in their social media and other marketing efforts to attract customers.[12]

23.    As a business, King Produce garnered, and has maintained, a local customer base. Customers regularly stop by King Produce to chat with Maha and Aiman, to shop, give feedback

---

[8]    Affidavit of Maha at ¶ 7; Affidavit of Aiman at ¶ 7.
[9]    Affidavit of Maha at ¶ 8, 9; Affidavit of Aiman at ¶ 8, 9.
[10]    Affidavit of Maha at ¶ 21; Affidavit of Aiman at ¶ 20.
[11]    Affidavit of Maha at ¶ 10, 29; Affidavit of Aiman at ¶ 10, 25.
[12]    Affidavit of Maha at ¶ 6, 10; Affidavit of Aiman at ¶ 6, 10.

on their products, or simply to engage in the community Maha and Aiman have sown through their decades of service to the Market.[13]

## The Transition

24.     In April 2024, the City ceded its management and operation of the Market to a non-profit, the Cleveland Public Market Corporation ("CPMC"). Mudry was appointed to serve as CPMC's first Executive Director, a position which, upon available information and belief, she continues to hold today.

25.     Upon available information and belief, the agreement between the City and CPMC was memorialized through a management agreement whereby the City retains ownership of the Market and exercises oversight of CPMC's management and operation of the Market. This oversight includes, but is not limited to, receiving updates through its Department of Public Works on a quarterly basis and making annual budget allocation determinations to the Market based on CPMC's performance.

26.     During the management transition, CPMC represented to the Market's vendors and the public at large that it was committed "to maintaining an environment where family-owned small businesses thrive" and articulated its core values to include "welcom[ing] and serv[ing] businesses, residents, and visitors with diverse lived experiences and perspectives" and "creat[ing] the conditions for thriving, independent, and diverse local businesses that offer good jobs in the community."[14]

27.     During this transition, Maha and Aiman continued to advocate for market improvements, raising the same issues with Market sanitation, infestation, maintenance, and

---

[13]   Affidavit of Maha at  ¶ 10; Affidavit of Aiman at ¶ 10.
[14]   "CPMC Market Management Transition FAQs" Published through the City of Cleveland. https://www.clevelandohio.gov/sites/clevelandohio/files/2024-04/CPMC%20Market%20Management%20Transition%20FAQs.pdf (Accessed on April 27, 2025).

safety. They also advised Mudry directly that the dock area was outdated and that coolers needed installed for the produce area.[15]

28.     Once again, these grievances were ignored and many of the cited sanitation, infestation, maintenance and safety issues remain today.[16]

29.     In 2024, Maha was diagnosed with breast cancer and she has been undergoing treatment ever since. Despite this diagnosis, Maha continued to work at the Market when she was able. On the few occasions when Maha had to close King Produce to obtain medical treatment, this was viewed negatively by Ms. Mudry and the CPMC, even though Maha personally advised Ms. Mudry that she was closing the stands to undergo cancer treatments.[17]

## The Termination

30.     With CPMC taking over the helm of the Market's operation from the City, Maha and Aiman awaited a new lease from CPMC enabling their continued use of the Market stands.[18]

31.     While awaiting their new lease, Maha and Aiman continued to operate their business as normal, providing quality produce and service to their patrons.[19]

32.     Maha and Aiman did not breach any of the terms of their Lease agreement with the City during this period of transition or otherwise, nor were they put on notice of any conduct which the City and/or CPMC considered a breach of their lease agreement.[20]

33.     Notwithstanding their continued compliance with their Lease terms and decades of service to the Market's patrons, on March 13, 2025, Maha and Aiman were handed a Notice of Termination of their September 8, 2022 West Side Market Rental Agreement for their produce

---

[15]     Affidavit of Maha at  ¶ 12; Affidavit of Aiman at ¶ 12.
[16]     Affidavit of Maha at  ¶ 13; Affidavit of Aiman at ¶ 13.
[17]     Affidavit of Maha at  ¶ 22, 23, 24.
[18]     Affidavit of Maha at  ¶ 11; Affidavit of Aiman at ¶ 11.
[19]     Id.
[20]     Affidavit of Maha at  ¶ 16; Affidavit of Aiman at ¶ 16.

stands ("the Termination Notice"). An authentic duplicate of the original Termination Notice is attached hereto as **Exhibit A.**[21]

34.     The Termination Notice states, in pertinent part, that CPMC, "on behalf of the Landlord [the City], acting pursuant to the Management Agreement between the City [] and [CPMC]" intended the letter to "serve as formal written notice of termination of" their lease with the City and that King Produce's "final month of tenancy at the Building shall be April 2025."[22]

35.     The Termination Notice provided no justification for the termination of the Lease, simply noting that termination of the lease was permitted upon completion of any month-to-month term.[23]

36.     The Termination Notice was signed by Mudry in her capacity as "Executive Director" of CPMC, "as agent of the City of Cleveland."[24]

37.     When Maha and Aiman sought clarification for why their lease was being terminated, Ms. Mudry's proffered reason was pretextual and cited to minor alleged criticisms made by market-hired "secret shoppers." Neither the Market, Mudry, CPMC, nor the City previously advised them of any issues which would constitute a violation of the Lease, let alone that such alleged issues would lead to the Lease being terminated without renewal.[25]

38.     In the wake of Maha and Aiman's receipt of the termination notice, Mudry took to several print and digital media outlets to make false, disparaging, and defamatory statements against Maha and her business, suggesting, *inter alia,* that she sells rotten produce, engages in

---

[21]    Affidavit of Maha at  ¶ 14; Affidavit of Aiman at ¶14.
[22]    Exhibit A.
[23]    *Id.*
[24]    *Id.*
[25]    Affidavit of Maha at  ¶ 15-16; Affidavit of Aiman at ¶ 15-16.

price gouging, employs aggressive sales tactics, and was the subject of numerous customer complaints.[26]

39. These false and defamatory remarks have destroyed any chance of obtaining subsequent placement for Maha's business.[27]

40. On Thursday, April 24, 2025, Tiffany Allen-White contacted Maha and Aiman via email concerning "a final walk-through inspection of the King's Produce stand and storage areas prior to [their] 5:00 pm departure" and outlining "reminders" for "[their] last day," suggesting CPMC, the City, and Ms. Mudry imminently intend to move forward with their discriminatory and retaliatory eviction of King Produce on April 30, 2025 at 5:00 pm. An authentic duplicate of the original email is attached hereto as **Exhibit B**.[28]

41. Should Maha's lease conclude without renewal at the end of April, 2025, Maha will experience immediate and irreparable harm, including the loss of her First Amendment freedoms, a violation of her Fourteenth Amendment right to equal protection, and irreparable financial ruin with no alternative means to provide for her family and pay for her necessary medical treatment as she will be deprived of her business's sole and singular storefront and source of income.[29]

## COUNT I
## 42 U.S.C. §1983 – First Amendment: Retaliation Based on Speech

42. Plaintiff hereby adopts and incorporates the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten.

43. Defendants are "person[s]" and at all times relevant to this action, were acting "under color of state law," as defined in 42 U.S.C. §1983.

---

[26]  Affidavit of Maha at ¶ 31; Affidavit of Aiman at ¶ 27.
[27]  *Id.*
[28]  Affidavit of Maha at ¶ 32; Affidavit of Aiman at ¶ 28.
[29]  Affidavit of Maha at ¶ 30, 33; Affidavit of Aiman at ¶ 26, 29.

44.     Free speech is a fundamental constitutional activity.

45.     Maha and Aiman's exercise of speech including, *inter alia,* raising sanitation, prolific rat infestation, maintenance, and safety concerns relative to the Market, was free speech protected by the First Amendment to the United States Constitution.

46.     Upon available information and belief, Defendants have enacted illegal and unconstitutional policies and customs in their operation and management of the Market, including those which direct the termination and non-renewal of lease agreements for tenants and vendors who undertake protected speech they deem unfavorable.

47.     Upon available information and belief, Mudry, an individual with decision-making authority, directed, ratified, and/or agreed with a subordinate's decision to terminate and deny renewal of Maha's lease agreement on the ground that she undertook protected speech which Defendants deemed unfavorable as evidenced by Mudry's signature on the Termination Notice.

48.     Upon available information and belief, Defendants have encouraged a custom of tolerance and/or acquiescence of federal rights violations, including that which resulted in tenants and vendors who undertake protected speech having their leases terminated without option for renewal.

49.     Upon available information and belief, Defendants' actions in declining to extend Maha a new lease for tenancy at the Market was directly motivated partly, if not solely, by her and her husband's exercise of free speech.

50.     Defendants' policies, customs, and actions constitute retaliation against Maha for her exercise of fundamental First Amendment Rights.

51.     Defendants' policies, customs, and actions would chill a person of ordinary firmness from engaging in constitutionally protected free speech.

52.     As a direct and proximate result of Defendants' unconstitutional policies, customs, practices, and actions, Maha has suffered damages and is entitled to relief under the United States Constitution and 42 U.S.C. §1983.

53.     Defendants' unconstitutional policies, customs, and acts of retaliation have proximately caused and will continue to cause irreparable harm to Maha and the community at large relative to constitutionally protected speech.

## COUNT II
## 42 U.S.C. §1983 – Fourteenth Amendment: Equal Protection

54.     Plaintiff hereby adopts and incorporates the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten.

55.     Defendants are "person[s]" and at all times relevant to this action, were acting "under color of state law," as defined in 42 U.S.C. §1983.

56.     Maha is of Middle Eastern descent, having immigrated from Egypt and attained United States citizenship through naturalization.[30] Furthermore, Maha is of the female sex.

57.     Historically, Maha and her husband have been counseled by the City to stop speaking Arabic so that she will not "turn off" customers.[31]

58.     Upon available information and belief, two (2) of the approximately twelve (12) produce vendors received a notice of termination. Both vendors who received a notice of termination were operated by women of Egyptian national origin.[32]

---

[30]   Affidavit of Maha at ¶ 20.
[31]   Affidavit of Maha at ¶ 21; Affidavit of Aiman at ¶ 20.
[32]   Affidavit of Maha at ¶ 25; Affidavit of Aiman at ¶ 21.

59.     Maha and Aiman are aware of other similarly situated non-minority Market vendors who, despite receiving negative reviews and customer complaints, did not receive a Notice of Termination, and indeed, were extended a new lease by Defendants.[33]

60.     Maha is guaranteed equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

61.     Upon available information and belief, Defendants have enacted illegal and unconstitutional policies and customs in their operation and management of the Market, including those which direct the termination and non-renewal of lease agreements for tenants and vendors who are Egyptian and/or of Middle Eastern descent.

62.     Upon available information and belief, Defendants have enacted illegal and unconstitutional policies and customs in their operation and management of the Market, including those which direct the termination and non-renewal of lease agreements for tenants and vendors who are female.

63.     Upon available information and belief, Mudry, an individual with decision-making authority for Defendants, ratified the decision to terminate and deny renewal of Maha's lease agreement on the ground that Maha is Egyptian and/or of Middle Eastern descent as evidenced by Mudry's signature on the Termination Notice.

64.     Upon available information and belief, Mudry, an individual with decision-making authority for Defendants, ratified the decision to terminate and deny renewal of Maha's lease agreement on the ground that Maha is female as evidenced by Mudry's signature on the Termination Notice.

---

[33]     Affidavit of Maha at ¶ 26; Affidavit of Aiman at ¶ 22.

65.     Upon available information and belief, Mudry, at minimum, implicitly authorized, the unconstitutional conduct resulting in the termination and denied renewal of Maha's lease agreement.

66.     Upon available information and belief, Defendants have a custom of tolerance and/or acquiescence of federal rights violations, including that which resulted in tenants and vendors who are Egyptian and/or of Middle Eastern descent having their leases terminated without option for renewal.

67.     Upon available information and belief, Defendants have a custom of tolerance and/or acquiescence of federal rights violations, including that which resulted in tenants and vendors who are female having their leases terminated without option for renewal.

68.     Upon available information and belief, Defendants' actions in declining to extend Maha a new lease for tenancy at the Market was directly motivated partly, if not solely, by her Egyptian national origin and/or Middle Eastern descent.

69.     Upon available information and belief, Defendants' actions in declining to extend Maha a new lease for tenancy at the Market was directly motivated partly, if not solely, by her female sex.

70.     As a direct and proximate result of Defendants' unconstitutional policies, customs, practices, and actions, Maha has suffered damages and is entitled to relief under the United States Constitution and 42 U.S.C. §1983.

71.     Defendants' unconstitutional and discriminatory policies, customs, practices, and actions have proximately caused and will continue to cause irreparable harm to Maha and the community at large.

## COUNT III
## Defamation

72.     Plaintiff hereby adopts and incorporates the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten.

73.     In the wake of Maha and Aiman's receipt of the Termination Notice, Mudry, in her personal capacity and her official capacity as an agent on behalf of the City and CPMC, made disparaging statements against Maha and her business, including, but not limited to, that she engages in "price gouging," sells "moldy produce," and employs "aggressive sales tactics" on or before April 7, 2025.

74.     Upon available information and belief, the City, CPMC, and John Does 1-10 authorized and ratified Mudry's statements against Maha. As such, Defendants are liable for such defamatory statements.

75.     The statements made by Mudry are false and were made in order to suggest the existence of a pretextual business reason for the termination and non-renewal of Maha's lease agreement and distract from the discriminatory and retaliatory reasons set forth above.

76.     Upon available information and belief, in making these statements, Mudry acted negligently as to the statements' truth, with actual knowledge of the statements' falsity, or with a high degree of awareness of their probable falsity. Further, Mudry's defamatory statements were made with actual malice.

77.     The statements made by Mudry were defamatory *per se*, tending to injure Maha in her trade, profession, and community. Mudry's statements were also *per quod,* otherwise subjecting Maha to scorn, ridicule, shame, contempt, and embarrassment.

78.     The statements made by Mudry were published to third parties, including, but not limited to, through dissemination through print and media outlets.

15

79.     The third parties to whom the statements were published understood their defamatory nature and actionable character.

80.     As a direct and proximate result of these statements, Maha has sustained, and will continue to sustain, direct financial loss and reputational harm.

## COUNT VI
## Injunctive Relief

81.     Plaintiff hereby adopts and incorporates the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten.

82.     Maha is substantially likely to prevail on each of the aforementioned claims.

83.     Defendants' conduct has caused, and continues to cause, real, certain, substantial, and serious harm to Maha.

84.     Unless enjoined from continuing such conduct, Defendants' actions will cause imminent irreparable harm to Maha.

85.     An injunction is necessary to prevent such irreparable harm to Maha, would not amount to serious injury to others, including Defendants, and would not be contrary to the public's interest.

86.     Defendants should therefore be immediately enjoined from:

Enforcing or otherwise enabling the unconstitutional termination of Plaintiff's West Side Market Rental Agreement dated September 8, 2022, including, but not limited to:

(1) Requiring Plaintiff to surrender Market Arcade Stand Numbers 24, 26, and 28 ("the Premises") on or before April 30, 2025.

(2) Prohibiting Plaintiff from entering, using, and occupying the Premises and the Market Grounds after April 30, 2025 as contemplated by the Rental Agreement, including, but not limited to:

    a.  Plaintiff's operation of business on the Premises during Public Market Hours;

    b.  Plaintiff's display and offer for sale of fresh fruits and vegetables to West Side Market patrons on the Premises;

    c.  Plaintiff's storage of wares, equipment, and other goods used in the ordinary course of business on the Premises; and,

    d.  Plaintiff's access to, and use of, other parts and space within the Market Grounds in the ordinary course of business.

**WHEREFORE,** Plaintiff prays for the following:

1.    Compensatory damages in an amount in excess of $75,000.00, exclusive of costs and interest, to be proven at trial in order to fully compensate Plaintiff for her injuries caused by Defendants;

2.    Temporary, preliminary, and permanent injunctive relief enjoining Defendants from:

Enforcing or otherwise enabling the unconstitutional termination of Plaintiff's West Side Market Rental Agreement dated September 8, 2022, including, but not limited to:

(1) Requiring Plaintiff to surrender Market Arcade Stand Numbers 24, 26, and 28 ("the Premises") on or before April 30, 2025.

(2) Prohibiting Plaintiff from entering, using, and occupying the Premises and the Market Grounds after April 30, 2025 as contemplated by the Rental Agreement, including, but not limited to:

    a.  Plaintiff's operation of business on the Premises during Public Market Hours;

    b.  Plaintiff's display and offer for sale of fresh fruits and vegetables to West Side Market patrons on the Premises;

      c.  Plaintiff's storage of wares, equipment, and other goods used in the ordinary course of business on the Premises; and,

      d.  Plaintiff's access to, and use of, other parts and space within the Market Grounds in the ordinary course of business.

3.     Temporary, preliminary, and permanent injunctive relief ordering Defendants to:

      a.  Remove and/or retract defamatory public statements concerning Plaintiff.

4.     Punitive damages;

5.     Reasonable attorneys' fees;

6.     Costs incurred in prosecuting this action; and,

7.     Any other appropriate relief that this Court deems just and equitable.

Respectfully submitted,

*/s/ Courtney J. Trimacco*
COURTNEY J. TRIMACCO (0082816)
WINTER │ TRIMACCO CO., LPA
950 Main Ave., Suite 1210
Cleveland, Ohio 44113
Ph: (216) 675-3300 / Fax (216) 472-8706
Email: courtney@wintertrimacco.com

*Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury in this matter with the maximum number of jurors permitted by law.

/s/ Courtney J. Trimacco
COURTNEY J. TRIMACCO (0082816)
WINTER │ TRIMACCO CO., LPA

*Counsel for Plaintiff*

# Exhibit A

March 13, 2025

<u>VIA HAND DELIVERY</u>
Maha Abdou Mikhael
Aiman Ebrahim
dba King's Produce
1979 West 25th Street
Market Arcade, Stand Nos. 24, 26, 28
Cleveland, Ohio 44113

**Re:  NOTICE OF TERMINATION**
       **West Side Market Rental Agreement dated September 8, 2022**
       **1979 West 25th Street, Stands 24, 26, 28, Market Arcade, Cleveland, Ohio 44113**

Dear Maha and Aiman –

On behalf of the Landlord, acting pursuant to the Management Agreement between the City of Cleveland and Cleveland Public Market Corporation, an Ohio nonprofit corporation, dated April 12, 2024, please let this letter serve as formal written notice of termination of the above-referenced Rental Agreement (the "Lease") by and between the City and **Maha Abdou Mikhael**, individually, and **Aiman Ebrahim**, individually, doing business as **King's Produce** (collectively "you" or "Tenant") (Landlord and Tenant, collectively, the "Parties") at the above-referenced property (the "Premises").

Pursuant to Article IV of the Lease, following the expiration of the Term on August 31, 2023, the Lease continued on a month-to-month basis until further notice of the parties. That same Article IV explicitly allows for termination of the Lease upon completion of any month-to-month term. Please take notice that the Lease shall terminate as of April 30, 2025 (the "Termination Date"), and will not be renewed for a new term, nor allowed to be converted to any other tenancy. Your final month of tenancy at the Building shall be April 2025.

Please take notice that you are required to surrender the Premises to Landlord no later than the Termination Date. Pursuant to Article XI of the Lease, you are required to deliver possession of the Premises on the Termination Date, promptly and in good condition, reasonable wear and tear excepted. Please contact me to schedule your final walk-through and discuss other move-out procedures.

Provided that Tenant has faithfully performed all of the covenants and agreements in the Lease, Landlord shall return Tenant's Security Deposit, or any then-remaining balance thereof, after deductions are made for any amounts due and owing or for arrearages or damages to the Premises, as more fully set forth in Article V of the Lease.

**LANDLORD RESERVES ALL THE RIGHTS AND REMEDIES PROVIDED UNDER APPLICABLE LAWS OF THE STATE OF OHIO, INCLUDING BUT NOT LIMITED TO DAMAGES FOR UNPAID RENT OR TO THE PROPERTY, AS APPLICABLE, AND NOTHING IN THIS NOTICE MAY BE CONSTRUED AS A WAIVER OF SUCH RIGHTS AND REMEDIES.**

Sincerely,

Rosemary Mudry, Executive Director
Cleveland Public Market Corporation,
as agent of the City of Cleveland

CC VIA EMAIL ONLY:
Tiffany Allen-White, Director of Operations and Facilities
< Tiffany@westsidemarket.org>

**Exhibit B**



On Thursday, April 24, 2025, 6:08 PM, Tiffany Allen-White <Tiffany@westsidemarket.org> wrote:

Hello Aiman,

On Wednesday April 30th, at 4:55pm I will be conducting a final walk-through inspection of the King's Produce stand and storage areas prior to your 5:00pm departure.

As you prepare for your last day, please review the list below of reminders:
- **Cleaning**: Both your stand and storage areas must be thoroughly cleaned prior to this walk-through. This includes removing all product, personal belongings, signage, trash, and any items not belonging to the property.
- **Keys & Locks**: Be prepared to return your copies of the keys to the stand doors at this inspection. Please also remove all locks from cabinets or storage lockers.
- **Payments:** Confirm that your Tenants Association dues are paid in full.

Your adherence to these guidelines will ensure that we are able to return your security deposit to you in full and in a timely manner. If you have any questions or need further clarification, please contact me directly.

~Tiffany

**Tiffany Allen- White**

Director of Operations and Facilities

Cleveland Public Market Corporation

216-493-2501

westsidemarket.org

