IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MAHA ABDOU MIKHAEL, | ) | Case No. 1:25-cv-00851 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CLEVELAND PUBLIC MARKET | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.    INTRODUCTION

Plaintiff Maha Abdou Mikhael's Complaint names as Defendants Cleveland Public

Market Corporation ("CPMC"), the City of Cleveland, Rosemary Mudry,[1] and ten John Doe

defendants. (R. 1). The Complaint alleges the following causes of action: (1) retaliation based on

speech in violation of 42 U.S.C. §1983; (2) an equal protection claim based on violation of 42

U.S.C. §1983; (3) defamation; and (4) injunctive relief. *Id*. Plaintiff also filed a motion for a

temporary restraining order ("TRO") pursuant to Federal Rule of Civil Procedure 65. (R. 2).

Plaintiff seeks to enjoin the termination of an expired lease that was on a month-to-month basis,

where Defendants gave notice on March 13, 2025, that the premises was to be

vacated/surrendered by April 30, 2025. (R. 1-1, PageID# 24-25). Plaintiff filed her Complaint and

---

[1] Mudry is alleged to be an employee of either the City of Cleveland, CPMC, or both.

1

Motion for TRO one day before the expiration of the lease. (R. 1 & 2). The Court held a telephonic hearing on April 30, 2025. (R. 12).

For the following reasons, the motion is denied.

## II.     ALLEGED FACTS

The relevant alleged facts are gathered from the Complaint, Plaintiff's motion, and the attachments thereto.  It is alleged that the City of Cleveland owns the West Side Market ("Market"), and that CPMC is an Ohio non-profit corporation organized and acting under the color of state law by way of its contractual relationship with the City of Cleveland and undertaking a delegated public function.[2] (R. 1. PageID# 3, ¶¶6, 9).

Vendors within the Market operate independently of the Market, leasing space within the interior concourse and the arcade through Rental Agreements with the City by and through its Department of Public Works. (R. 1, PageID# 4, ¶12). Plaintiff and her husband operated King produce, a vendor at the Market—occupying Arcade Stall Nos. 24, 26, and 28—by way of a Rental Agreement ("the Lease") between Plaintiff, her husband, and the City. (R. 1, PageID# 5-6, ¶¶13-16). **The Lease** commenced on September 8, 2022, and **expired on August 31, 2023**. (R. 1, PageID# 5, ¶16) (emphasis added). After the Lease expired, King Produce continued its tenancy at the Market on a month-to-month basis. *Id.*

On March 13, 2025, Plaintiff received a letter from Rosemary Mudry, Executive Director

---

[2] Without deciding the matter and only for the purposes of this motion, the Court will assume *arguendo* that the City of Cleveland owns the market, and that CPMC was acting as its agent under color of state law.

of CPMC, which, in material part, stated as follows:

> On behalf of the Landlord, acting pursuant to the Management Agreement between the City of Cleveland and Cleveland Public Market Corporation, an Ohio nonprofit corporation, dated April 12, 2024, please let this letter serve as formal written notice of termination of the above-referenced Rental Agreement (the "Lease") by and between the City and **Maha Abdou Mikhael**, individually, and **Aiman Ebrahim**, individually, doing business as **King's Produce** (collectively "you" or "Tenant") (Landlord and Tenant, collectively, the "Parties") at the above-referenced property (the "Premises"). Pursuant to Article IV of the Lease, following the expiration of the Term on August 31, 2023, the Lease continued on a month-to-month basis until further notice of the parties. *That same Article IV explicitly allows for termination of the Lease upon completion of any month-to-month term.* Please take notice that the Lease shall terminate as of April 30, 2025 (the "Termination Date"), and will not be renewed for a new term, nor allowed to be converted to any other tenancy. Your final month of tenancy at the Building shall be April 2025.

(R. 1-1, PageID# 24-25, Exh. A) (bold in original; italics added). The Lease itself has not been attached to any of Plaintiff's filings. Plaintiff has not asserted that the notice was untimely or deficient in any manner.

Plaintiff avers that when she "sought clarification of the grounds for our lease's termination, Ms. Mudry's proffered reason was pretextual and cited to minor alleged criticisms made by market hired 'secret shoppers.'" (R. 1-3, PageID# 30, Plaintiff's Aff. at ¶15). The Complaint also alleges that Defendant CPMC, through Defendant Mudry, accused Plaintiff of engaging in price gouging, selling moldy produce, and employing aggressive sales tactics. (R. 1, PageID# 15, ¶73). Plaintiff cites no provision of the expired Lease that required Defendants to provide any reason for ending the ensuing month-to-month tenancy.

Plaintiff alleges that years earlier, in 2019, Plaintiff and her husband began raising concerns of sanitation issues, security, and a rodent infestation at the Market. (R. 1, PageID# 5, ¶18). Without specifying when, Plaintiff asserts she shared her concerns with the news media after her

3

concerns were ignored. *Id.* at ¶¶8-9.[3]

Plaintiff states that throughout her tenancy, which started as early as 2006, "comments have been made to us by the City's Market managers that we should not speak Arabic so we do not 'turn off' customers." (R. 1, PageID# 4, ¶15; R. 1-3, PageID# 31, Plaintiff's Aff. at ¶ 21). Plaintiff does not identify with any precision who made the alleged comments or when they were made.

Plaintiff states that she is "aware of other similarly situated, non-minority Market vendors who, despite receiving negative reviews and customer complaints, did not receive a Notice of Termination and, indeed, were extended a new lease for their Market stands by Defendants." (R. 1-3, PageID# 31, Plaintiff's Aff. at 26).

According to the Complaint, in April 2024, Defendant City of Cleveland ceded its management and operation of the Market to Defendant CPMC, and Defendant Mudry was appointed to serve as CPMC's first Executive Director, a position she holds to this day. (R. 1, PageID# 7, ¶24).

Plaintiff's affidavit sets forth her subjective but "genuine belief" that Defendant's termination of the month-to-month tenancy was motivated by discriminatory animus against her national origin and sex. (R. 1-3, PageID# 31-32, Plaintiff's Aff. at ¶27).

Finally, Plaintiff asserts that allowing the Defendant to continue with the eviction would

---

[3] Though not stated in her affidavit, Plaintiff's brief in support of the motion for a TRO asserts that Plaintiff and her husband spoke to the news media regarding safety concerns in December of 2023, and commented that business had been slow under the City's management in February of 2024. (R. 2-1, PageID# 56).

4

cause her "irreparable financial ruin." *Id*. at ¶33.

## III.    ANALYSIS

### A.  Applicable Law

It is well-settled that a temporary restraining order is an extraordinary remedy granted only in rare circumstances. Fed. R. Civ. P. 65; *Granny Goose Foods v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974); *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002). To obtain such relief, the moving party must "clearly show that immediate and irreparable injury, loss, or damage will result" if the motion is denied. Fed. R. Civ. P. 65(b)(1)(A). The reviewing court considers four factors when adjudicating a motion for a TRO: (1) whether the movant has a strong likelihood of success on the merits;[4] (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether granting the relief would cause substantial harm to others; and (4) whether the public interest would be served by granting the relief. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). "The factors are not prerequisites to injunctive relief; rather, the Court must balance them to determine whether they weigh in favor of granting a TRO or injunction." *Libertarian Party of Ohio v. Husted*, 2014 WL 1267018, at *1 (S.D. Ohio Sept. 24, 2014). Plaintiff, as the moving party bears the burden of justifying the issuance of an injunction. *Id.*

---

[4] "Although a party is not required to prove its case in full at a preliminary injunction hearing, a plaintiff 'must show more than a mere possibility of success.'" *York Risk Servs. Grp., Inc. v. Couture*, 787 Fed. App'x 301, 305 (6th Cir. 2019) (*quoting Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997)).

The purpose of a TRO is to preserve the status quo. When a court grants a request for an injunction "findings of fact and conclusions of law made by [the] court … are not binding at a trial on the merits." *United States v. Edward Ross & Sons*, 384 F.3d 258, 261 (6th Cir. 2004). Similarly, the proof needed to obtain an injunction "is much more stringent than the proof required to survive a  summary judgment motion," and when a court denies a request for an injunction, "it express[es] no opinion as to the ultimate merits of the plaintiff['s] case." *Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000).

Finally, the court "is not required to make specific findings as to each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*., 511 F.3d 535, 542 (6th Cir. 2007).

**B.  Application to the Facts Alleged Herein**

As is detailed below, because the Plaintiff cannot meet the first two factors, it is not necessary to address the remaining two factors.

**1.  Complaint Does *Not* Demonstrate a Strong Likelihood of Success**

Plaintiff has failed to offer a convincing argument that she has a strong likelihood of success on the merits.

First, Plaintiff's equal protection claim is rather thinly pleaded. Her conclusory assertion that she was discriminated against for being a woman has no factual foundation in the pleadings or in the submitted attachments. Thus, the Court cannot find that she has a strong likelihood of success on the merits.

Plaintiff also makes the conclusory allegation that she was discriminated against based on

her national origin. The Equal Protection Clause of the Fourteenth Amendment commands that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich*., 470 F.3d 286, 299 (6th Cir. 2006); *accord Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). The "threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Napolitano*, 648 F.3d at 379 (citing *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006)).

Plaintiff's allegations that she has received disparate treatment stems from comments ostensibly made by unidentified City of Cleveland market managers that Plaintiff should not speak Arabic so as not to "turn off" customers. (R. 1, PageID# 4, ¶15; R. 1-3, PageID# 31, Plaintiff's Aff. at ¶ 21). There is no indication how close in time these comments occurred relative to the decision to end Plaintiff's month-to-month tenancy, or, more importantly, that any of the unidentified City of Cleveland market managers played any role in the decision to end the tenancy. Significantly, Defendant CPMC took over management of the Market in April of 2024, according to Plaintiff, and therefore, the City of Cleveland was no longer making decisions concerning the management of the Market when the decision to end the month-to-month tenancy was made by Defendant CPMC. There is no evidence that either CPMC or Defendant Mudry— the decisionmakers—were even aware of the alleged comments.

7

Plaintiff also states that she is "aware of" non-minority Market vendors who had their lease extended despite receiving negative reviews and/or customer complaints, but she does not set forth any foundational basis. (R. 1-3, PageID# 31, Plaintiff's Aff. at 26).  Furthermore, while Plaintiff's counsel asserted during the Court's telephonic hearing on April 30, 2025, that another vendor whose Lease was not renewed was also a woman of Egyptian national origin like Plaintiff, counsel for Defendant CPMC indicated that several other vendors of Egyptian and Middle Eastern national origin remain among the Market's vendors.

While "[a]n affidavit in support of a temporary restraining order can be based on hearsay .... the fact that the affidavit is based on hearsay is a factor in determining the weight of the affidavit." *Aslanturk v. Hott*, 459 F. Supp. 3d 681, 697 (E.D. Va. 2020). "[T]he question of how much weight an affidavit will be given [submitted in connection with an application for injunctive relief] is left to the trial court's discretion and the quality of the affidavit will have a significant effect on this determination. Not surprisingly, therefore, when the primary evidence introduced is an affidavit made on information and belief rather than on personal knowledge, it generally is considered insufficient to support a motion for a preliminary injunction. Courts similarly give hearsay statements less credence than direct allegations." 11A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2949 (3d ed. 2025) (footnotes omitted).

The Complaint, affidavits, and exhibits have failed to show a strong likelihood that Defendants treated Plaintiff differently due to her sex or national origin. "[O]nly intentional, purposeful discrimination violates the Equal Protection Clause." *Oldham ex rel. Young v. Cincinnati Pub. Sch.*, 118 F. Supp. 2d 867, 871 (S.D. Ohio 2000) (*citing Washington v. Davis*, 426 U.S. 229, 243 (1976)). The Court declines to find a strong likelihood of success based on

8

such allegations. Plaintiff's own Complaint indicates that Defendants' proffered reason for ending her tenancy was complaints by the market's "secret shoppers," and, while denying their veracity, Plaintiff states that Defendant CPMC, through Mudry, accused Plaintiff of selling moldy produce, engaging in price gouging, and employing aggressive sales tactics.

Though Plaintiff portrays these reasons as "pretextual" or defamatory, the Court cannot resolve a factual dispute at this stage of the proceedings. Whether ultimately true or false, Defendants stated reasons for ending the tenancy as identified in the Complaint seve as reminder that a myriad  of non-discriminatory or non-retaliatory reasons may have existed that motivated Defendants' decision. The Court finds the evidence presented by Plaintiff certainly does not foreclose other explanations or render such explanations implausible or suspect. The mere possibility of success on her equal protection claims is insufficient to support the extraordinary remedy of a TRO. As stated above, the level of proof necessary to obtain a TRO "is much more stringent than the proof required to survive a  summary judgment motion." *Leary*, 228 F.3d at 739.

Turning to the First Amendment retaliation allegations, the protections of the First Amendment are not limitless, and the Supreme Court has "acknowledged that **the First Amendment does not create property or tenure rights**," such that a terminated government employee has no protection for speech related to private employment matters but only for "speech on matters of public concern." *Board of County Commissioners, Wabaunsee County, Kansas*, 518 U.S. 668, 675 (1996) (emphasis added) (*citing Connick v. Myers*, 461 U.S. 138, 146 (1983)). To prevail, a plaintiff  must demonstrate that the "conduct at issue was constitutionally protected, and that it was a substantial or motivating factor in the termination." *Id*. Even if a plaintiff "meets the

burden" of showing her speech was a substantial or motivating factor in the termination of the Lease, "the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct. *Id.* (*citing Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977)). It bears noting that Plaintiff's brief cites no authority suggesting that an available remedy for an alleged retaliation of a lessee or tenant's exercise of one's First Amendment rights could create a property right in an expired lease or tenancy of indefinite duration, and the above authority strongly suggests otherwise.

Herein, Plaintiff began making complaints about the conditions at the market in 2019, yet Defendants, nonetheless, signed the Lease with Plaintiff that commenced on September 8, 2022, despite presumably having knowledge of Plaintiff's complaints that predate the start of the Lease by several years. Although sworn testimony is lacking as to when Plaintiff spoke to the news media and raised concerns about the Market, the Court will assume *arguendo* that said events occurred in December of 2023 as stated in Plaintiff's brief. (R. 2-1). Significantly, Defendants did not terminate Plaintiff's month-to-month tenancy for over a year after these events, despite the fact that they could have done so at the end of any month with timely notice. Due to the lack of a strong temporal proximity between Plaintiff's complaints and the termination of her tenancy, the evidence supporting her First Amendment retaliation claim is uncompelling and falls far short of demonstrating a strong likelihood of success on the merits.

### 2. Lack of Irreparable Injury

A plaintiff seeking a TRO or preliminary injunction must "clearly show that immediate and irreparable" injury will result before injunctive relief may issue. Fed. R. Civ. P. 65; *see also Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 104 (6th Cir. 1982). "The basis

of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (citations omitted and internal quotation marks omitted). Monetary injuries, "however substantial, in terms of money, time and energy necessarily expended" are insufficient; compensatory damages or other corrective relief available in the ordinary course of litigation, "weighs heavily against a claim of irreparable harm" *Id.* at 90. In other words, "[i]f money damages can compensate the moving party, a preliminary injunction is not appropriate." *SEIU Health Care Michigan v. Snyder*, 875 F. Supp. 2d 710, 723 (E.D. Mich. 2012)

Plaintiff asserts that allowing the Defendant to continue with the eviction would cause her "irreparable financial ruin." (R. 1-3, PageID# 32, Plaintiff's Aff. at ¶33). During the hearing, Plaintiff's counsel argued that the *lost income* from her business at the Market would lead to devastating effects, as she would be unable to afford health insurance. While the Court is sympathetic to the financial difficulties that may ensue, the ripple effects of lost income do not render Plaintiff's damages non-monetary and irreparable in nature.

Plaintiff has not demonstrated irreparable harm of a non-monetary nature. In other words, should Plaintiff ultimately prevail, there is no basis to conclude that compensatory damages would be insufficient to compensate Plaintiff for her lost income. So Plaintiff has not established that she will suffer irreparable injury absent a TRO.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for a temporary restraining order (R. 2) is

DENIED.

IT IS SO ORDERED.


Date: May 23, 2025                                    /s/ *David A. Ruiz*
                                                      David A. Ruiz
                                                      United States District Judge